ALFRED LEWIS, Appellant, v. A. & B. IMHOF, Respondents.

**Kansas City Court of Appeals, November, 1, 1909.**

1. **CARRIERS: Vendor: Delivery: Shipping Instructions.** It is a well established rule that when goods are ordered and no specific instructions are given in regard to shipment, a delivery to the usual carrier for the purchaser with proper directions, is a constructive delivery to the purchaser and such goods immediately become the property of the purchasers, subject only to the right of stoppage *in transitu.*

2. ———: ———: **Agents.** The rule is based on the legal fiction that in ordering goods to be transported by common carrier, the vendee by implication appoints the vendor his agent to select the carrier usually employed and to contract with such carrier in the usual manner, then the carrier becomes the agent of the vendee to receive the goods.

3. ———: ———: **Presumption: Value of Goods.** It is the duty of the vendor to enter into such a contract with the carrier as will afford the vendee a remedy for the full value of the goods if they be negligently lost by the carrier.

Appeal from Buchanan Circuit Court.—*Hon. L. J. Eastin,* Judge.

AFFIRMED.

*Allen, Gabbert & Mitchell* for appellant.

A delivery of goods by vendor to a carrier for shipment direct to vendee is a delivery to the purchaser. Therefore, when plaintiff delivered the goods sued for to the express company and billed them direct to defendants, plaintiff had performed his part of the contract and became entitled to recover purchase price of the goods from defendants. Bloom's Son & Co. v. Haas, 130 Mo. App. 122, 108 S. W. 1078; Graff v. Foster, 67 Mo. 520; Drug Co. v. McMahan, 50 Mo. App. 25; Milling Co. v. Stanley, 132 Mo. App. 308; Hague v. Porter,

3 Hill (N. Y.) 141; Downer v. Thompson, 2 Hill (N. Y.) 137; Potter v. Lansing, 1 Johns (N. Y.) 215; 3 Am. Dec. 310; People v. Haynes, 14 Wendell 561; Wilcox v. Green, 72 N. Y. 17; Krulder v. Ellison, 47 N. Y. 36; Wheelhouse v. Parr, 141 Mass. 583; Mann v. Glanber, 96 Ga. 795, 22 S. E. 405; Kessler v. Smith, 42 Minn. 494, 44 N. W. 794; Planters' Oil Mill & Mfg. Co. v. Falls (Miss.), 29 So. 786; McCullough v. Armstrong, 118 Ga. 424, 45 S. E. 379. The court erred in refusing to give plaintiff's declaration of Law No. 4. When goods are ordered and no special instructions are given by purchaser as to shipment, delivery to a carrier usually employed for such purpose, with proper shipping instructions, is a delivery to the purchaser. Graff v. Foster, 67 Mo. 512; Bloom's Son Co. v. Haas, 130 Mo. App. 125; Garretson v. Selby, 37 Iowa 529; Mee v. McNider, 109 N. Y. 500, 17 N. E. 424; Kroulder v. Ellison, 47 N. Y. 36; Magonder v. Gage, 33 Md. 344; Wheelhouse v. Parr, 141 Mass. 593, 6 N. E. 787; Ledon v. Havemeyer (N. Y.), 24 N. E. 297; Butts v. Hensey (Neb.), 102 N. W. 1011; Grief & Bro. v. Seligman (Texas), 82 S. W. 533; Benjamin on Sales (4th Ed.), secs. 181, 1040; Scharff v. Meyer, 133 Mo. 455; Krulder v. Ellison, 47 N. Y. 40. The carrier also became and was the agent for the defendant for the purpose of receiving and making the contract for the transportation of said goods. Sawyer v. Johnson, 178 Mass. 374, 59 N. E. 1022; Scharff v. Meyer, 133 Mo. 445; Gill & Fisher v. Com. Co., 84 Mo. App. 456; Bloom's Son Co. v. Haas, 130 Mo. App. 125; Comstock v. Affoelter, 50 Mo. 412.

*Vinton Pike* for respondent.

(1) Where goods are ordered for shipment a delivery to a carrier by the vendor for that purpose is a delivery to the vendee in three cases: First, where the vendee has designated the particular carrier as the one by whom the goods are to be shipped. Second, where

the carrier is not designated by the vendee, but the goods are delivered to the usual carrier employed to ship the goods between the two places, which would be a constructive delivery to the vendee.     Third, where no carrier has been designated by the vendee, but a particular carrier has been employed in other similar cases by the usage of the parties to the transaction. Drug Co. v. McMahan, 50 Mo. App. 25.     (2) Plaintiff could not perform his obligation to deliver the goods without substituting in his place, the legal obligation of a carrier to transport the goods or pay their full value.    The contract with the carrier for transportation must have been a proper one in view of all the circumstances of the case, preserving expressly or impliedly the remedy against the carrier for failure to perform its common law duty.     Buchman v. Levi, 3 Camp. 414; 2 Mech., Sales, 1031; Clarke v. Hutchins, 14 East 475; Ward v. Taylor, 56 Ill. 494.

JOHNSON, J.—Action on an account for goods sold and delivered by plaintiff, a wholesale merchant in New York, to defendants, retail merchants in St. Joseph.    The defense is that the goods were not delivered.    The case was tried to the court on an agreed statement of facts and judgment was entered for defendants.    Plaintiff appealed.    The agreed statement of facts is as follows:

1.    The plaintiffs are merchants doing business in the city of New York, and the defendants are partners engaged in business in the city of St. Joseph, Missouri, and both parties were so engaged in business at all times herein mentioned.

2.    On May 1, 1907, defendants gave the plaintiff's traveling salesman at St. Joseph, Missouri, a verbal order for the goods sued for in this case, and said salesmen of plaintiff's transmitted to the plaintiffs at New York, a written order, of which a true copy is hereto attached, marked "Exhibit A."

3. On receipt of the order of plaintiffs, they in New York City on May 4, 1907, packed the goods for transportation and delivered the same to the American Express Company in said city of New York for transportation to St. Joseph, Missouri, said express company limiting its undertaking, and not being further bound than by executing and delivering to plaintiff a receipt, of which the following is a copy:

4. The American Express Company is a common carrier whose line extended from New York City in State of New York to Chicago in the State of Illinois, said Chicago being the nearest point to destination (in this case St. Joseph, Mo.) reached by said carrier, and where it delivered the goods aforesaid to the Wells-Fargo Express Company (an independent connecting carrier), for carriage to St. Joseph, but said goods were never delivered by the latter express company; but were lost or destroyed by reason of its negligence while in its possession.

5. At all times herein mentioned, there were express companies engaged in business as common carriers whose lines extended from New York city to St. Joseph, Missouri, to any of which the goods in question could have been delivered for carriage to St. Joseph.

6. Said Wells-Fargo Express Company received said goods from the American Express Company at Chicago, and then and there undertook to carry said goods from Chicago to St. Joseph.

7. When the goods sued for were ordered by defendants of plaintiff's salesman at St. Joseph, the former directed that the said goods be shipped to them by express, without specifying any company or line, or terms of shipment, and the American Express Company was one of the carriers usually employed by plaintiff and other New York shippers for transportation of merchandise to St. Joseph, Missouri.

8. It was customary with the manufacturers and wholesalers of the class of goods sued for in New York

City to ship goods to purchasers by express, selecting any one of the various carriers whose contracts of shipment contained stipulations such as are found in the blank forms hereto attached.   (Exhibits "B," "C," and "D.")

9.   The price of the goods sued for was $162 at New York City, and they were to be shipped by express to St. Joseph—freight to be paid by defendants at destination.

10.   Further, fuller or better pleading is waived, and if upon the foregoing facts defendants are liable, plaintiffs may have judgment for $162, with interest from December 15, 1907; if not, judgment shall be entered for defendants.   The foregoing stipulation of facts is for all purposes of the case, and upon it alone the cause shall be submitted in the above court, and in any other court to which said cause may be appealed.

The receipt or shipping contract issued by the American Express Company to plaintiff was made out on a printed form which among other stipulations contained the following: "It is further agreed that this company is not to be held liable or responsible for any loss of, or damage to, said property or any part thereof, from any cause whatever, unless in every case the said loss or damage be proved to have occurred from the fraud or gross negligence of said company or its servants; nor in any event shall this company be held liable or responsible, nor shall any demand be made upon it beyond the sum of fifty dollars, unless the just and true value thereof is stated herein, and an extra charge is paid or agreed to be paid therefor, based upon such higher value."

Across the bottom of the face of the contract in bold type is the further agreement that "the liability of this company is limited to $50, unless the just and true value is stated in this receipt and an extra charge is paid or agreed to be paid therefor, based upon such higher value."   A column for the insertion of the value

of the property appears in the blank space provided for the description of the particular shipment. For the purposes of our inquiry there is no material difference between the blank form of receipt issued by the American Express Company and those used by other express companies which are attached as exhibits to the agreed statement of facts. Plaintiff failed to have the value of the goods stated in the receipt and shipped them on a valuation of $50 and on a rate based on such valuation.

Recently in an action brought against an express company by the consignee of goods shipped from New York to St. Joseph and lost in transportation, we said, speaking through BROADDUS, P. J.: "We believe it is entirely competent for a carrier to limit the amount of its liability for negligence where the shipper fixes a valuation upon the goods shipped and agrees that the carrier's liability should not be in excess of such value when it is shown that on goods of greater value a higher rate is exacted. In such cases, a carrier may make reasonable regulations, graduating its compensation and providing in case of failure of the shipper to declare the value as required, it shall be deemed not to exceed a certain sum. Elliott on Railroads, sec. 1510." [Dry Goods Co. v. Express Co., 133 Mo. App. 683.]

Under the doctrine of this decision, of the soundness of which we have no doubt, it is clear that if the delivery of the goods by plaintiff to the express company constituted a constructive delivery to defendants, the recovery which defendants might enforce against the express company would be limited by the express terms of the shipping contract to fifty dollars for goods costing the defendants one hundred and sixty-two dollars. The rule is well established "that when goods are ordered and no specific instructions are given in regard to their shipment . . . a delivery to the usual carrier for the purchaser with proper directions is a constructive delivery to the purchaser, and the goods im-

mediately upon such delivery, become the property of the purchaser subject only to the right of stoppage *in transitu.*" [Bloom v. Haas, 130 Mo. App. 122; Graff v. Foster, 67 Mo. l. c. 520; Myer Bros. Drug Co. v. McMahon, 50 Mo. App. 18; Milling Co. v. Stanley, 132 Mo. App. 308.]

This rule is based on the legal fiction that in ordering goods to be transported by common carrier the vendee by implication appoints the vendor his agent to select a carrier usually employed in such shipments and to contract with such carrier in the usual manner for the transportation. Where the vendor performs these duties of his agency the carrier then becomes by implication the agent of the vendee to receive delivery of the goods. In the absence of proof to the contrary, we must begin with the presumption that the usual and ordinary way requires the vendor, in the performance of his duties as agent of the vendee to ship the goods under a contract that will afford the vendee a remedy against the carrier for their full value, if they be negligently lost by the carrier. This was the rule of the common law, and we perceive no reason in the changed conditions of modern commerce and means of transportation for departing from it.

LORD ELLENBOROUGH said in Clarke v. Hitchings, 14 East, 475, a case where the carrier had a well known regulation not to be answerable for goods above a certain value unless entered and paid for as such, and the seller delivered goods of greater value without so entering them: "The plaintiff cannot be said to have deposited the goods in the usual and ordinary way, for the purpose of forwarding them to the defendant, unless he took the usual and ordinary precaution, which the notoriety of the carrier's general undertaking required with respect to the goods of this value, to insure them a safe conveyance; that is by making a special entry of them. He had an implied authority, and it was his duty to do whatever was necessary to secure the re-

sponsibility of the carriers for the safe delivery of the goods, and to put them in such a course of conveyance as that in case of a loss the defendant might have his indemnity against the carrier." [2 Mechem on Sales, sec. 1183, and note.]

*Arguendo,* we agree with counsel for plaintiff that authority in the vendor to enter into a limited liability contract such as that under consideration needs not be expressly conferred by the vendee, but may be implied either from a course of dealing between the parties or from a known practice and custom of the merchants of New York to ship goods by express without declaring their value unless otherwise directed by the customer. But this concession does not benefit plaintiff for the reason that the sale in question was the first business transaction between the parties and, therefore, no course of dealing existed between them and the existence of a custom among the New York merchants not to state the value of goods shipped by express is not disclosed by the agreed statement. We cannot assume without proof that there was a custom of that kind. The eighth paragraph of the agreed statement goes no further than to say it was customary for New York merchants to ship by express on the forms of receipt attached, but it does not say that it was customary for them to fail to insert the value of the goods in the blank place provided for such statement. In other words, the stipulation does not say that New York merchants were in the habit of sending out goods by express under shipping contracts which, in effect, greatly understated the value of the goods.

We conclude that the burden was on plaintiff to show either express or implied authority to ship the goods in the manner he did, and that such authority should not be implied from the mere direction of a new customer to ship "by express."

The judgment is affirmed. All concur.